ANNA HEARTWELL, Appellant, *v.* LEOPOLD H. BERLINER, Respondent.

ROBERT HEARTWELL, Appellant, *v.* LEOPOLD H. BERLINER, Respondent.

First Department, February 6, 1925.

Physicians and surgeons — malpractice — action to recover damages from physician for injuries resulting from improper treatment of woman during childbirth — claim by plaintiff that afterbirth was not entirely removed and that part was removed by another physician later — evidence — error to refuse to permit women who had been present at childbirth to testify that part removed by other physician looked like afterbirth — error to exclude conversation between defendant and physician, now dead, who removed remainder of afterbirth — Civil Practice Act, § 347, not applicable.

In an action against a physician to recover damages for alleged improper treatment of a woman during childbirth, based on the fact that he did not remove all of the afterbirth, it was error for the court to refuse to permit women who were present at the birth and had had experience with childbirth so that they knew the appearance of an afterbirth, to testify that matter subsequently removed from the woman by another physician some time after the birth had the appearance of an afterbirth. The testimony should have been received and submitted to the jury for them to give such weight as in their judgment it was entitled to receive.

It was error for the court to exclude testimony concerning a conversation between
    the defendant and the doctor, now dead, who removed the part of the afterbirth
    not removed by the defendant.    Such evidence was not barred by section 347
    of the Civil Practice Act.

APPEAL in each of the above-entitled actions by the plaintiffs,
Anna Heartwell and Robert Heartwell, from a judgment in each
action in favor of the plaintiff, entered in the office of the clerk
of the county of New York on the 30th day of October, 1923,
upon the dismissal of the complaints at the close of the entire
case.

*Joseph H. Hayes* [*Henry Ginnane* with him on the brief], for the
appellants.

*Nadal, Jones & Mowton* [*Edward P. Mowton* of counsel], for the
respondent.

FINCH, J.:

The defendant attended Mrs. Heartwell at confinement and
delivered her of a child.    According to the testimony adduced by
the plaintiffs, the day following the birth Mrs. Heartwell felt better,
but the next day she became very ill, and an offensive odor was
noticed, which became worse from day to day, and Mrs. Heartwell's
illness so intensified that three days later the defendant, at the
mutual desire of the family and himself, called in another physician;
that the defendant examined Mrs. Heartwell internally and stated
that he found nothing, that she was absolutely clean; that Mrs.
Heartwell's condition thereafter became so bad that two days
later her husband called in a Dr. Armstrong, who took from within
Mrs. Heatwell a large piece of decayed, fibrous substance, somewhat
spongy, very dark in color, with a greenish tint and having a very
offensive odor, corresponding to the odor that had been emanating
from Mrs. Heartwell and which up to that time had permeated
the entire apartment.

The plaintiffs contended, and sought to prove, that the sub-
stance removed was a part of the placenta, or afterbirth, and claimed
that it was negligently left within Mrs. Heartwell, and that the
defendant was negligent in not discovering its presence and removing
the same.

For the purpose of proving that the substance removed was
a part of the placenta, the plaintiffs offered the testimony of certain
of Mrs. Heartwell's relatives who were present at the birth, to the
effect that the mass removed by Dr. Armstrong was of the same
appearance as an afterbirth.    One of these witnesses, Mrs. Taylor,
testified that at the birth of her own daughter she saw the afterbirth,
and also testified that she was present at the birth in the case at

bar and saw the defendant take out a piece of the afterbirth with an instrument, look at it and shake his head. Another witness, Mrs. Streets, had been present at the delivery of four children, and each time had seen the afterbirth. Neither of these witnesses, however, was permitted to testify that the substance removed by Dr. Armstrong was of the same appearance as an afterbirth, the court holding that they were not qualified as experts so to testify. This was error, as the witnesses were qualified to testify whether from their observation the one thing resembled the other, having seen both. In *Greenfield* v. *People* (85 N. Y. 75, 83) the court said: " It is not difficult to perceive that there are many substances which are commonly known, in regard to which a witness may testify, although he is unacquainted with their ingredients or chemical properties. Many of these would be more familiar to those who had occasion to notice them frequently than to others, and hence they could testify more directly and positively in regard to the same. But to hold that no one but an expert or a scientific person should be allowed to speak on such subjects, would be establishing a stricter rule than is authorized by law. While, then, inexperienced persons and those comparatively ignorant may be able to testify in reference to such substances, the weight to be given to their evidence must of course, depend upon the circumstances and their knowledge of the matter." Each of the said witnesses, having recently seen an afterbirth removed from Mrs. Heartwell and having previously seen afterbirths removed from other women, should have been allowed to testify whether the substance removed by Dr. Armstrong as aforesaid resembled an afterbirth, leaving it to the jury to give to their testimony such weight as in their judgment it was entitled to receive.

There also was erroneously excluded testimony concerning the conversation between the defendant and Dr. Armstrong concerning the matter removed by Dr. Armstrong, upon the ground that Dr. Armstrong was dead and could not be cross-examined. The defendant admitted that there was a mass taken from Mrs. Heartwell and that Dr. Armstrong spoke to him concerning it. It is clear that the conversation between the defendant and the deceased Dr. Armstrong is not barred by section 347 of the Civil Practice Act, which forbids a witness being examined " in his own behalf or interest " concerning a personal transaction with the deceased, said section being designed for the protection of the deceased person's estate, and not for the protection of the witness. It is quite possible that what was said between Dr. Armstrong and the defendant might have constituted an admission on the part of the defendant that the matter removed as aforesaid was placenta.

It follows that the judgments should be reversed and new trials granted, with costs to the appellants to abide the event.

CLARKE, P. J., DOWLING, MARTIN and BURR, JJ., concur.

In each case: Judgment reversed and a new trial ordered, with costs to appellant to abide the event.